# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

RICHARD H. JOHNSON,

                Plaintiff,

v.

KENOSHA COUNTY JAIL, MEDICAL STAFF, SANTOS, and KENOSHA COUNTY SHERIFF'S DEPARTMENT,

                Defendants.

Case No. 21-CV-576-JPS

**ORDER**

      Plaintiff Richard Johnson, an inmate confined at Green Bay Correctional Institution, filed a pro se complaint under 42 U.S.C. § 1983 alleging that the defendants at Kenosha County Jail violated his constitutional rights. (Docket #1). This Order resolves Plaintiff's motion for leave to proceed without prepaying the filing fee and screens his complaint.

**1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE**

      The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C. § 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account. *Id.*

      On June 16, 2021, the Court waived Plaintiff's initial partial filing fee, and gave him the opportunity to voluntarily dismiss the case if he wished.

(Docket #8). Plaintiff has indicated that he wishes to proceed with the litigation (*see* Docket #9, #10, #11, #12). The Court will, therefore, grant Plaintiff's motion for leave to proceed without prepaying the filing fee. (Docket #3). He must pay the remainder of the filing fee over time in the manner explained at the end of this Order.

2.  **SCREENING THE COMPLAINT**

    2.1  **Federal Screening Standard**

Under the PLRA, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

### 2.2 Plaintiff's Allegations

Plaintiff explains that for approximately 42 days between December 2020 to January 2021, he was in the custody of the Kenosha County Jail ("KCJ") after visiting with his probation officer. He was also in custody in March and April, 2021. During this time, he was denied mental health treatment, including his mental health medication, for almost a month. He suffered from panic and anxiety attacks and, at one point, was placed in a "turtle suit" (i.e., an anti-suicide gown) and a padded room. He was not allowed to use the bathroom and was "made to lay in [his] feces." (Docket #1 at 4).

On his first night in the padded room, Plaintiff says that nobody was on call or present. He fainted from a lack of medication. The next day, a doctor took him off of suicide watch. Once in general population, however, Plaintiff was "harassed by inmates, staff, and nursing staff." (*Id.* at 5). He elaborates that he "begged for [his] meds" but was not seen by medical staff until January, right before he was to be released.

Plaintiff has attached various KCJ grievance forms to his complaint. It does not appear that these forms were submitted to KCJ as part of a

Page 3 of 13
Case 2:21-cv-00576-JPS   Filed 01/13/22   Page 3 of 13   Document 16

complaint-exhaustion process. Rather, it seems that Plaintiff has used the space provided on these forms to supplement the allegations in his complaint.

In the first grievance form, he says that, on January 21, he did not receive his medication again, which made him mentally unstable. He also alleges that he was threatened by staff and that he felt "off." One of these threats may have been sexual in nature—though the circumstances are not clear, Plaintiff mentions several times that he thinks he may have been raped. He does not say who he thinks raped him, nor does he provide any detail as to when this happened or why he thinks he was raped.

In the second batch of forms, he writes that, on March 25, 2021, he asked for help from various correctional officers and submitted an "[im]minent danger grievance" but received no answer. It is not clear why he needed help or felt he was in imminent danger. He was not permitted to contact his probation officer. One corrections officer, Santos, told him that the lieutenant refused his request to speak with his probation officer. From April 15 to April 25, 2021, he was placed in segregation. The Court gleans that Plaintiff does not understand why he was placed in segregation, and Plaintiff intimates that it may have been because he submits a lot of grievances. (*Id.* at 10–11) ("[W]hy this was done, I don't know, but I have a history wit[h] KCJ employees about me knowing the law and me writing grievances.").

During this period of segregation, Plaintiff was not seen by a mental health professional for a few days, but he was started on his medication "the next day." (*Id.* at 11). He began to have issues with certain correctional officers, including Santos. Plaintiff does not describe what exactly happened, but he received several write-ups that delayed his release from

segregation. It seems, however, that Plaintiff did not receive a hearing on these policy violations because Santos erroneously informed the administration that Plaintiff had waived his right to a hearing.

Finally, Plaintiff complains that he has had difficulty receiving copies of grievences and medical documents because he is indigent. There is typically a nominal fee—ten cents per page—associated with copying documents, which Plaintiff cannot afford. This, he explains, has made it more difficult for him to file claims and exhaust his administrative remedies.

Plaintiff mentions the sheriff's office in the section of his complaint about copying fees, but it is not clear what the sheriff's office had to do with the fees associated with receiving copies of paperwork. In Plaintiff's injuries section, he states that he was "bit by a dog and harassed by the police," but, again, the circumstances are not clear. (*Id.* at 17). Plaintiff seeks damages to compensate for the denial of his mental health medication and treatment.

### 2.3 Analysis

Plaintiff's allegations are extensive and quite difficult to follow. The allegations about the Kenosha County Sheriff's Department are sparse and indisputably insufficient to state any claim, so that defendant will be dismissed. The Court discerns several potential constitutional claims, each of which will be examined in turn.

#### 2.3.1 Deliberate Indifference (Eighth Amendment) – Health Services

To state a claim for deliberate indifference to serious medical needs under the Eighth Amendment, Plaintiff must allege: (1) an objectively serious medical condition; (2) that Defendants knew of the condition and were deliberately indifferent in treating it; and (3) this indifference caused

him some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011).

Plaintiff alleges that he was denied psychiatric medications and mental health treatment for days at a time, which caused him to have panic and anxiety attacks, and which may have resulted in his repeated designations in segregation. While the denial of his medication might ultimately be explained as mere negligence or the result of a considered treatment decision by his care providers, at the present stage, the Court finds that he states an actionable claim.

The docket reflects that Plaintiff is suing "Medical Staff," but Plaintiff in fact sues "medical staff, nurses, practitioners/department" for violations of his Eighth Amendment. (*Id.* at 2).[1] The Court cannot exercise personal jurisdiction over non-existent or unidentified individuals. As a result, Plaintiff must identify the prison officials presently referred to in the complaint as medical staff, nurses, and practitioners.

---

[1] Plaintiff refers to the medical "department," but the complaint is short on allegations suggesting that *Monell* liability might attach to this conduct. Plaintiff specifically says that "[e]veryone else in the jail was being seen immediately" by mental health professionals, indicating that his treatment was not the result of an explicit policy, a widespread custom, or a decision from a final policy-maker. *See* (Docket #1 at 17); *Darchak v. City of Chicago Bd. of Educ.*, 580 F.3d 622, 629 (7th Cir. 2009). The same issue affects his ability to bring suit against KCJ; he has not alleged that any of his treatment was the result of a policy, custom, or final decision.

To facilitate service of the complaint and identification of the Doe defendants, the Court will join the warden of the jail, Kenosha County Sheriff, David Beth ("Beth"), as a defendant in this action. *See Duncan v. Duckworth*, 644. F.2d 653, 655 (7th Cir. 1981). Plaintiff is advised that in the Court's scheduling order, which will be issued after Beth is served, he will be afforded a period of time in which to conduct discovery into the identities of the Doe defendants. He should seek this information from Beth. Failure to amend the complaint to identify the Doe defendants by the deadline set forth in the scheduling order may result in dismissal of this action.[2]

### 2.3.2  Conditions of Confinement (Eighth Amendment)

To state a claim for unconstitutional conditions of confinement in violation of the Eighth Amendment, Plaintiff must first allege that he suffered a deprivation sufficiently serious that denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Farmer v. Brennan*, 511 U.S. 825, 834 (1970) (holding that an Eighth Amendment violation arises when prisoners are deprived of "the minimal civilized measure of life's necessities"). Prisoners have a right to sanitary and hygienic living conditions. *See Myers v. Ind. Dep't of Corr.*, 655 F. App'x 500, 503–04 (7th Cir. 2016).

Plaintiff alleges that he did not have the opportunity to use the toilet and was left overnight to lay in his own feces. He was not given any tissues and had no way of calling for help. Without knowing anything else about

---

[2] Once the Doe defendants are identified, the Court will dismiss Beth as a defendant, since there is no allegation that Beth has done anything wrong or that he participated in Plaintiff's medical care in any fashion. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

Page 7 of 13
Case 2:21-cv-00576-JPS   Filed 01/13/22   Page 7 of 13   Document 16

the situation, the Court finds that this is sufficient to state a claim for unconstitutional conditions of confinement. This claim, too, proceeds against the John and Jane Doe medical staff, nurses, and practitioners, as it appears that Plaintiff was placed in segregation for mental health reasons.

### 2.3.3 Due Process Violation (Fourteenth Amendment)

A procedural due process violation arises when state officials deprive an individual of life, liberty, or property without due process of law. *Colon v. Schneider*, 899 F.2d 660, 666 (7th Cir. 1990). Such a claim requires Plaintiff to establish "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) the failure to employ constitutionally adequate procedures." *Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622, 627 (7th Cir. 2016). In the prison context, Plaintiff's liberty and property interests are more attenuated; but "disciplinary segregation *can* trigger due process protections depending on the duriation and conditions of segregation." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). However, the Supreme Court has held that thirty days in segregation "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Sandin v. Connor*, 515 U.S. 472, 486 (2009). Since *Sandin*, the Seventh Circuit has "concluded that inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008).

Plaintiff's allegations do not rise to the level of a due process violation. Plaintiff claims that Santos was instrumental in denying a hearing on certain policy violations, which resulted in a delay of Plaintiff's release from segregation. However, Plaintiff was never in segregation for longer

than a month, and, in April, when the alleged due process violation occurred, he was only in segregation for ten days. *See* (Docket #1 at 10). The duration of the segregation was too short to implicate due process protections under *Sandin*. Moreover, the complaint suggests that Plaintiff was held in segregation for protective purposes, rather than punitive purposes, which further undercuts his due process protections. (*Id.*); *Townsend*, 522 F.3d at 771.

### 2.3.4 Retaliation (First Amendment)

To state a First Amendment retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009). "A prisoner has a First Amendment right to make grievances about conditions of confinement." *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). Additionally, "an act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for a different reason, would have been proper." *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987) (quoting *Buise v. Hudkins*, 584 F.2d 223, 229 (7th Cir. 1978)).

Plaintiff insinuates that he was held in segregation because of various inmate grievances that he submitted, but he has not alleged any facts to support the inference that his grievances were a motivating factor in his segregation. Rather, his complaint states that he was placed in segregation for wellness-check reasons, and it includes some language that indicates that this time was lengthened by a few days after he received

Page 9 of 13
Case 2:21-cv-00576-JPS    Filed 01/13/22    Page 9 of 13    Document 16

policy-violation write-ups. This is insufficient to state a retaliation claim under the First Amendment.

### 3. CONCLUSION

For the reasons explained above, the Court will permit Plaintiff to proceed against John and Jane Doe defendants on two Eighth Amendment claims: one for deliberate indifference to his serious medical need, and another for unconstitutional conditions of confinement. Beth will be joined in the litigation for the limited purpose of identifying the Doe defendants. Santos, KCJ, and Kenosha County Sheriff's Department will be dismissed.

The Court will also address Plaintiff's "motion for order for jail to supply requested documents for plaintiff," (Docket #11), as this filing dovetails with several issues raised in the complaint. At various times in the complaint, Plaintiff stated that he was "blocked" from adequately litigating his claims because he could not afford the fees associated with making photocopies of his documents. There is not enough, based on these allegations, to find that Plaintiff stated an access-to-the-courts claim under the First Amendment. *See Fuches v. Ebbert*, 638 F. Supp. 2d 1014, 1016 (S.D. Ill. 2009). Additionally, Plaintiff's concern for submitting evidence that he has exhausted his administrative remedies, while important, is premature. Once the remaining defendants have been served, the Court will issue a trial scheduling order, and Plaintiff will be able to engage in discovery. Through discovery, he will be able to request the documents that he needs to prove his case.

The Court has enclosed with this Order guides prepared by court staff to address common questions that arise in cases filed by prisoners. These guides are entitled, "Answers to Prisoner Litigants' Common

Questions" and "Answers to Pro Se Litigants' Common Questions." They contain information that Plaintiff may find useful in prosecuting his case.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion for leave to proceed without prepaying the filing fee (Docket #3) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for order for jail to supply requested documents (Docket #11) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Kenosha County Jail, Santos, and the Kenosha County Sheriff's Department be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that David Beth, Sheriff of the Kenosha County Jail, be and the same is hereby **JOINED** as a party defendant in this action for the limited purpose of identifying the John and Jane Doe defendants;

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the complaint and this order upon Defendant Beth pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

**IT IS FURTHER ORDERED** that the John and Jane Doe medical staff, nurses, and practitioners shall file a responsive pleading to the complaint;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $350 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order; and

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. If Plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court

Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.

Dated at Milwaukee, Wisconsin, this 13th day of January, 2022.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge